UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation; THOSE CERTAIN UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY NOS. DG 103412 AND DG 103712,<br><br>Plaintiffs,<br><br>v.<br><br>ABB, INC.; and ABB POWER T&D COMPANY, INC.,<br><br>Defendants. | Case No.: 15cv605-MMA (KSC)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 15] |

Plaintiffs San Diego Gas & Electric Company ("SDG&E") and those certain underwriters at Lloyds of London ("Underwriters") subscribing to policy numbers DG 103412 and DG 103712 (collectively "Plaintiffs"), have filed a First Amended Complaint ("FAC") alleging negligence, strict product liability, breach of express warranty, and breach of contract. *See* Doc. No. 4. Defendants ABB, Inc. ("ABB") and ABB Power T&D Company, Inc. ("ABB Power," collectively "Defendants")[1] move for partial

---

[1] The Court notes that ABB Power merged with ABB, and the two are no longer separate entities. *See* Doc. No. 15-1 at 1, n.1.

summary judgment of Plaintiffs' claims. *See* Doc. No. 15. Plaintiffs filed an opposition to Defendants' motion, to which Defendants replied. *See* Doc. Nos. 21, 25. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **DENIES** Defendants' motion for partial summary judgment.

### FACTUAL BACKGROUND[2]

This action arises out of an incident which occurred at Plaintiffs' power facility located in Bonita, California. This facility is known as the San Miguel substation, which provides power to San Diego residents. On February 14, 2013, one of the facility's transformers[3] (the "subject transformer") ignited and caused substantial damage to Plaintiffs' property. Plaintiffs attribute the incident to an allegedly defective transformer bushing ("subject bushing") sold by ABB, and installed by ABB Power. Plaintiffs seek more than $7 million in damages.

The parties are and were sophisticated commercial entities when they negotiated and entered into the agreements relevant to this action. The parties wanted their risks and liabilities to be well-defined. Therefore, in their purchase and installation agreements for the subject bushing ("subject agreements"), the parties included provisions addressing their liabilities. The subject agreements limit both the type and amount of damages recoverable for losses arising out of, or related to, the subject agreements. Each of Plaintiffs' four causes of action outlined in the FAC seek damages arising out of, or related to, the subject agreements.

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits ("SSUF"). *See* Doc. Nos. 25-1, 25-2. Where a material fact is in dispute, it will be so noted. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[3] A transformer assists in the distribution of electricity by transforming voltage and current levels of electricity to enable distribution of power between electrical grids. Doc. No. 25-2 at 2. A bushing forms the terminal that connects the transformer windings from the input to the output between the electrical grid. *Id.* at 3.

On or about December 1, 2008, ABB entered into a Master Supply and Installation Agreement ("Master Agreement") for the sale of power transmission and distribution equipment to Plaintiffs. The Master Agreement provides that in order to effectuate a sale, future purchase orders would incorporate by reference the terms and conditions of the Master Agreement.

On February 1, 2011, Plaintiffs and ABB entered into an agreement for the purchase of twenty-seven (27) bushings ("Purchase Agreement"), including the subject bushing. The February 1, 2011 agreement was for the purchase of bushings only, and did not include any installation work. The Purchase Agreement expressly incorporates by reference the Master Agreement, which provides:

> In no event shall either party be liable to the other party for any incidental, consequential or punitive damages of any kind, however asserted, whether in tort, contract or otherwise. Unless otherwise specifically described in a Blanket Agreement or Release, Supplier's maximum aggregate liability for all claims arising under or related to a particular Release issued pursuant to this Master Agreement shall not exceed one hundred fifty percent (150%) of the amounts paid or payable under the particular Release, but in no event shall the minimum Limit of Liability be less than $200,000. . .

Doc. No. 4-1 at 59.[4]

On September 1, 2011, Plaintiffs and ABB Power entered into a standard service agreement ("Installation Agreement") for removal and installation of new and replacement bushings at the San Miguel substation, and SDG&E's Imperial Valley substation. The Installation Agreement also provides the same limitation on liability as outlined immediately above, barring consequential damages. *See* Doc. 4-2 at 29.

Moreover, both the Purchase Agreement and the Installation Agreement warrant that the bushings will be free from any and all defects in design, material, and workmanship. Plaintiffs claim that the subject bushing was defective and was the cause

---

[4] The Court refers to the CM/ECF pagination when referencing Doc. Nos. 4-1 and 4-2 (the Purchase and Installation Agreements).

of the fire.

Plaintiffs itemize their damages in their Joint Rule 26(a)(1) Disclosures. Plaintiffs' damages, totaling more than $7 million, include the following: Replacement Transformer Costs, Transformer Oil, Transformer Oil Heat Run, Transportation of Replacement Transformer, Siemens Tax, SDG&E Incurred Costs, SDG&E Material, SDG&E Material, SDG&E Direct Charges, and SDG&E Replacement Transformer Installation Labor. *See* Doc. No. 15-9 at 4-5.

Defendants contend that all of the damages Plaintiffs seek are consequential damages, barred by the parties' agreements. Plaintiffs, however, argue their damages include direct damages, such as damage to the subject bushing and related replacement costs. Defendants request the Court hold, as a matter of law, that Plaintiffs may not recover any of their itemized damages.[5] Doc. No. 15-1 at 19.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a

---

[5] The Court notes that in its reply brief, Defendants request an overly expansive form of relief—that the Court grant its motion and dismiss the entire action with prejudice. Doc. No. 25 at 10. However, Defendants move for partial summary judgment regarding the liability limitations set forth in the subject agreements. As such, the Court only addresses Defendants' initial request for determination that, as a matter of law, all of Plaintiffs' damages are unrecoverable.

reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) (internal quotation marks omitted).

## DISCUSSION

### I. Defendants' Evidentiary Objections[6]

As an initial matter, Defendants object to evidence submitted by Plaintiffs in opposition to Defendants' motion for partial summary judgment. Doc. No. 25-3. Defendants raise fourteen objections to four different declarations. *See id.* Each declaration, and Defendants' objections thereto, will be considered in turn.

**A. Declaration of Ryan Hatch**

Defendants list five objections to certain provisions of Ryan Hatch's declaration on the basis of the parol evidence rule and the secondary evidence rule. The Court finds the objections well-taken and **SUSTAINS** objections numbered 1-5. *See* Cal. Code Civ. Proc. § 1856; Fed. R. Evid. 1004.

**B. Declaration of David Denton (April 4, 2016)**

Defendants object to Exhibit A, attached to the declaration of David Denton, on the basis of hearsay. Exhibit A is a report generated by Engineering Design & Testing Corp. concerning the damaged transformer at issue in this case. Defendants do not indicate why this Exhibit constitutes hearsay, but presumably Defendants believe the document is being offered to prove the truth of its contents. Plaintiffs, however, indicate the Exhibit is not being offered for its truth, but rather to show that the transformer costs included the subject bushing. Thus, the report is admissible for this purpose. Accordingly, the Court

---

[6] The Court notes that Defendants' Evidentiary Objections exceed the page limit set forth in this Court's Civil Chambers Rules, which provide that "[i]f filed as a separate document, evidentiary and procedural objections may not exceed five (5) pages in length." Civ. Chambers R. IV. However, in the interests of justice, the Court considers all of Defendants' evidentiary objections.

**OVERRULES** Defendants' objection number 6.

### C. Declaration of James Baker (April 4, 2016)

Defendants list four objections to James Baker's declaration. Defendants object to Exhibit A, which contains a printout of a portion of the ABB website on the basis of hearsay, lack of authentication, and lack of foundation. Exhibit A, however, is admissible as an admission of a party opponent. *See* Fed. R. Evid. 801(d)(2). Exhibit A is also admissible to impeach Defendants. Moreover, Mr. Baker provides the requisite authentication and foundation for Exhibit A. Accordingly, the Court **OVERRULES** Defendants' objection number 7.

Defendants' three other objections to Mr. Baker's declaration seek to exclude various portions of the declaration on the basis of the parol evidence rule and the secondary evidence rule. The Court **SUSTAINS** objections numbered 8-10. *See* Cal. Code Civ. Proc. § 1856; Fed. R. Evid. 1004.

### D. Declaration of Robert Ganser (March 30, 2016)

Defendants list four objections to certain excerpts of Robert Ganser's declaration on the grounds of being vague, conclusory, argumentative, and that portions are unclear. Upon due consideration, to the extent the Court considers such evidence, Defendants' objections numbered 11-14 are **OVERRULED**.

## II.    Defendants' Request for Judicial Notice of Exhibit E

Defendants filed a Request for Judicial Notice, asking the Court to take judicial notice of Exhibit E in support of their motion for partial summary judgment pursuant to Federal Rule of Evidence 201(b)(2). Doc. No. 15-12. Exhibit E is a copy of SDG&E's 2007 Report Filed with the United States Securities and Exchange Commission. *See id.*; *see also* Doc. No. 15-8. Defendants rely on Exhibit E for the proposition that both the Purchase and Installation Agreements were "entered into by two large, sophisticated companies." SSUF 32. However, Plaintiffs do not contest that both parties were sophisticated, or argue that the agreements were unconscionable. *See* Doc. No. 21 at 2 n.1. Moreover, in light of Plaintiffs' position, Defendants withdrew this fact in their

Reply Separate Statement #1.  *See* Doc. No. 25-1 at 24.  Accordingly, the Court **DENIES AS MOOT** Defendants' request for judicial notice of Exhibit E.

### III. <u>Defendant's Motion for Partial Summary Judgment[7]</u>

Defendants ABB and ABB Power jointly move for partial summary judgment as to the damages Plaintiffs seek pursuant to Plaintiffs' breach of express warranty and breach of contract claims.[8]  However, each defendant entered into a separate agreement with the Plaintiffs.  Accordingly, the Court will analyze each contract, and its governing law, separately.

**A. The Purchase Agreement**

The Court must first determine the substantive law applicable to the Purchase Agreement.  Defendants argue that because Plaintiffs' claims are premised on an alleged product defect, the California Commercial Code ("CCC") governs Plaintiffs' damages.  *See* Doc. No. 15-1 at 6.  Plaintiffs concede that the CCC controls the Purchase Agreement entered into between SDG&E and ABB.  *See* Doc. No. 21 at 16.  Because Plaintiffs agree the CCC governs the Purchase Agreement, the Court must next determine whether the damages arising under the Purchase Agreement are consequential or direct in nature.

Defendants claim that *all* of Plaintiffs' damages stemming from the Purchase Agreement are consequential, and thus barred by the Purchase Agreement.  Doc. No. 15-1 at 5.  The Purchase Agreement incorporates by reference the Master Agreement, which provides, "[i]n no event shall either party be liable to the other party for any incidental,

---

[7] As an initial matter, the Court notes California law governs the present case.  Both the Purchase Agreement and Installation Agreement contain California choice of law provisions.  *See* Doc. Nos. 4-1 at 52, 4-2 at 22.  Because neither party contests application of California law, the Court will proceed by analyzing the parties' dispute pursuant to California law.

[8] Neither Defendants, nor Plaintiffs, attempt to categorize Plaintiffs' itemized damages as either consequential or direct in the moving papers.  Instead, Defendants argue that all of the damages Plaintiffs seek are consequential in nature.  Plaintiffs respond by stating that some of its itemized damages include direct damages.  Accordingly, the Court need not categorize each of Plaintiffs' itemized damages as either consequential or direct to determine whether a genuine dispute exists as to whether all of Plaintiffs' damages are consequential in nature.

consequential or punitive damages of any kind, however asserted, whether in tort, contract or otherwise." [9] Doc. No. 4-1 at 59. Plaintiffs acknowledge the consequential damages waiver provision, but contend that their itemized damages do include direct damages. *See* Doc. No. 21 at 16-17.

The CCC defines direct damages as "the difference between the value of goods accepted and the value they would have had if they had been as warranted by the seller." Cal. Com. Code § 2714. Incidental and consequential damages are defined as follows:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
> (2) Consequential damages resulting from the seller's breach include. . . (b) Injury to person or property proximately resulting from any breach of warranty.

Cal. Com. Code § 2715. The Restatement of Contracts indicates consequential losses "include such items as injury to person or property resulting from defective performance." Restatement (Second) of Contracts § 347 (Am. Law Inst. 1981).

The parties do not dispute that Plaintiffs seek over $7 million in damages, including: Replacement Transformer Costs, Transformer Oil, Transformer Oil Heat Run, Transportation of Replacement Transformer, Siemens Tax, SDG&E Incurred Costs,

---

[9] Section 2719(3) of the CCC permits the exclusion of recovery of consequential damages, unless the exclusion is unconscionable. Cal. Com. Code § 2719(3). Plaintiffs concede the consequential damages waiver provision is not unconscionable. *See* Doc. No. 21 at 2. In fact, Plaintiffs represent that:
> The parties can agree to the following: 1) Both parties were sophisticated entities; 2) There was a lengthy arms-length negotiation for both contracts; 3) The contracts are not unconscionable; 4) Plaintiffs agree there was a mutual risk transfer between the parties; 5) Plaintiffs do not dispute the provisions entitled 'Limitation on Liability' in both contracts apply.

*Id.* at n.1 (emphasis in original). Accordingly, the Court construes the subject agreements as valid contracts, entered into by sophisticated parties.

SDG&E Material, SDG&E Direct Charges, SDG&E Replacement Transformer Installation Labor.  Doc. No. 15-9 at 4-5.  Plaintiffs assert that "Replacement Transformer Costs" include the subject bushing, although not specifically itemized by Plaintiffs in its list of damages.[10]  Doc. No. 21 at 16-17.  Plaintiffs elaborate, claiming a bushing is a component part of a transformer.  *Id.* at 17.  Thus, Plaintiffs argue "Replacement Transformer Costs" "inherently includ[e] *all* component parts."  *Id.* (emphasis in original).  California courts have held that replacement costs are an accurate reflection of the loss in value of a defective product, and thus are a "proper damage measure for breach of warranty under [CCC] Section 2714."  *Cardinal Health 201, Inc. v. Tyco Electronics Corp.*, 87 Cal. Rptr. 3d 5, 32 (Cal. Ct. App. 2008).

Here, the main dispute centers on whether the subject bushing is considered a component part of the subject transformer.  It is undisputed that "[a] bushing forms the terminal that connects the transformer windings from the input to the output between the electrical grid."  Doc. No. 25-2 at 3.  Plaintiffs contend that by stating the transformer was damaged and required repair/replacement, the entire transformer, including "the very parts that make it a transformer" (i.e., the bushings), were damaged and/or required replacement.  Doc. No. 21 at 17 n.14.  Construing the itemized damages most favorably to Plaintiffs, a reasonable person could find Plaintiffs' damages include the subject bushing, which would constitute direct damages if considered a replacement cost.

As such, viewing the evidence in the light most favorable to Plaintiffs, the Court finds a genuine issue of material fact exists as to whether all of the damages Plaintiffs seek are consequential in nature.  Although consequential damages are barred by the

---

[10] Defendants' argument that Plaintiffs' failure to use the term "bushing" in its list of damages provided as part of its Rule 26 initial disclosures is unavailing.  The Complaint clearly alleges the failure of the subject bushing caused the fire, resulting in loss to Plaintiffs.  Additionally, Defendants' own website provides, "transformer components such as bushings. . . are essential parts of transformers, ensuring they operate reliably and safely."  Doc. No. 21-4, Exhibit A.  Moreover, Plaintiffs submitted more than 6,000 pages of documents to Defendants which included Plaintiffs' damages.  Doc. No. 21 at 16.

contract between Plaintiffs and ABB, a reasonable person could find Plaintiffs' itemized list of damages include damages to the subject bushing, which could constitute direct damages. Accordingly, summary judgment is inappropriate on this basis.

**B. The Installation Agreement**

As noted above, the Court must first determine the substantive law applicable to the Installation Agreement. Defendants argue that because Plaintiffs' claims are premised on an alleged product defect, the California Commercial Code ("CCC") governs Plaintiffs' damages. *See* Doc. No. 15-1 at 6. Plaintiffs, however, contend the common law controls the Installation Agreement entered into between SDG&E and ABB Power because the agreement is a contract for services. *See* Doc. No. 21 at 11.

### i. Applicable Law

The CCC applies to "transactions in goods." Cal. Com. Code § 2102. "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . ." *Id.* at § 2105. The CCC does not, however, apply to transactions involving services. Rather, common law controls. "Complications arise when the transaction involves both goods and services." *TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006). In such an instance, application of the CCC turns on the essence of the agreement. *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.*, 208 Cal. App. 3d 1297, 1305 (Cal. Ct. App. 1989); *see also RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985). The Court must determine the predominant character of the agreement—whether the contract is for the provision of a service with goods incidentally involved, or for the provision of goods with services incidentally involved, and must apply the law that governs the predominant factor. *See United States ex. rel. Bartec Indus., Inc. v. United Pacific Co.*, 976 F.2d 1274, 1277 (9th Cir. 1992).

Here, the predominant character of the agreement is a contract for services. Defendants argue that although the agreement contains provisions relating to services, "it also includes a product warranty that Plaintiffs contend covers the subject bushing," thus

the CCC applies. Doc. No. 25 at 8. Defendants are incorrect for two reasons. First, the agreement is entitled "Standard Service Agreement for Labor and/or Services." Doc. 4-2 at 2. The predominant purpose of the agreement is to provide services. Although the agreement contains a product warranty, this provision comprises only a small portion of the contract. The vast majority of the agreement relates to ABB Power's installation of the bushings. *See* Doc. No. 4-2. Moreover, there was no sale of goods in the Installation Agreement that would make segregation of the contract appropriate.[11] *See TK Power*, 433 F. Supp. 2d at 1063.

Second, the fact that Plaintiffs' claims are premised on an alleged breach of product warranties, rather than deficient services, does not alter the character of the Installation Agreement. It is at the outset that a court looks to the essence of the agreement to determine its predominant character. *See RRX Industries, Inc.*, 772 F.2d at 546. Accordingly, California common law governs the Installation Agreement. The Court must next determine whether the damages arising under the Installation Agreement are consequential or direct in nature.

### ii. Nature of Plaintiffs' Damages

Defendants argue that Plaintiffs' damages are consequential damages, and are barred by the Installation Agreement. Plaintiffs contend that their itemized damages include direct damages.

The California Supreme Court has held that there are two types of damages at common law: "general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)." *Lewis Jorge Const. Management, Inc. v.*

---

[11] Defendants argue the Court can segregate the Installation Agreement, and analyze that portion of the agreement relating to goods pursuant to the CCC. However, the case law Defendants cite where courts have segregated a contract all involve a contract that included the purchase of goods, and some related service in the *same* contract. *See Stephenson v. Frazier, 399 N.E.2d 794 (Ind. Ct. App. 1980); Foster v. Colorado Radio Corp.*, 381 F.2d 222 (10th Cir. 1967). Here, however, the purchase of the subject bushing occurred in an entirely separate agreement. The only provision relating to the purchase is the warranty provision in the parties' Installation Agreement. Thus, the Court is not persuaded that segregation is appropriate in this case.

*Pomona Unified School Dist.*, 102 P.3d 257, 261 (Cal. 2004). "General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach." *Id.* Because the occurrence of general damages is sufficiently predictable, the parties at the time of contracting are "deemed" to have contemplated such damages. *Id.* Special damages, however, "are those losses that do not arise directly and inevitably from any similar breach of any similar agreement." *Id.* Thus, special damages "represent loss that 'occurred by reason of injuries following from' the breach." *Id.* at 262 (quoting *Mitchell v. Clarke*, 71 Cal. 163, 168 (Cal. 1886)). Special damages are among the losses that are "foreseeable and proximately caused by the breach of a contract." *Id.* (citing Cal. Civ. Code § 3300).

Here, because "Replacement Transformer costs" are potentially recoverable under the Purchase Agreement, such costs are also potentially recoverable under the Installation Agreement.[12] Although consequential damages are barred by the contract between Plaintiffs and ABB Power, a reasonable person could find Plaintiffs' "Replacement Transformer Costs" include costs that flow directly from an alleged breach. *See Lewis Jorge Const. Management, Inc.*, 102 P.3d at 261. Accordingly, summary judgment is not appropriate on this basis.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' motion for partial summary judgment in its entirety.

**IT IS SO ORDERED.**

Dated: November 14, 2016

        HON. MICHAEL M. ANELLO
        United States District Judge

---

[12] The parties do not address whether any of Plaintiffs' claimed damages are specific to either the Purchase Agreement, or the Installation Agreement. Accordingly, the Court assumes Plaintiffs seek to recover all of their itemized damages under both agreements.